.24 AD 465
108 NYS 1098

JAMES JOURDAN, as Receiver, etc., Respondent, *v.* THE LONG
ISLAND RAILROAD COMPANY; Appellant.

By the terms of an alleged contract between two railroad corporations each
  gave to the other the right to use its tracks and depots, and agreed
  to run its trains over the tracks of the other, the earnings of the
  two roads to be divided in certain proportions.  In an action against
  one of the corporations to recover damages for breach of the con-
  tract, it appeared that it was executed in the name of defendant by
  its president and secretary, who were also directors, and it was sealed
  with its corporate seal.  Defendant's secretary testified that the contract
  was drafted in pursuance of negotiations between the parties, and the
  draft was in his office.  It was executed with the intention of getting a
  ratification by the board of directors, but this was not done.  It appeared,
  however, that it was acted upon by defendant in the management of its
  business, it having complied with its terms for one year, and received for
  the entire period the benefit of a faithful performance on the part of the

other party. *Held*, that a motion for a nonsuit, made upon the ground that no valid execution of the contract on the part of defendant had been proved, was properly denied; that the contract, as executed, was presumptively the act of the corporation, and the burden was upon defendant of showing its invalidity in this respect; that the evidence showed conclusively that it was adopted and ratified by defendant in its corporate capacity; that if it intended to disavow the contract, it was its duty to be active in so doing, and not remain willfully passive in order to profit by an omission or mistake on the part of its own officers which it might have prevented.

(Argued June 11, 1889; decided October 8, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 14, 1886, which affirmed a judgment in favor of plaintiff, entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts are sufficiently stated in the opinion.

*Calvin Frost* and *E. B. Hinsdale* for appellant. The contract was one exceeding the powers of the president and secretary, as such, to make. (*F. N. Bk.* v. *Ocean Bk.*, 60 N. Y. 278, 288; *T. A. R. R. Co.* v. *Ebling*, 12 Daly, 99, 101; *Alexander* v. *Cauldwell*, 83 N. Y. 480; *Queen* v. *S. A. R. R. Co.*, 35 Super. Ct. 154, 159; *Nat. Bk.* v. *Norton*, 1 Hill, 572, 579; *Hoyt* v. *Thompson*, 5 N. Y. 320.) There is no proof of ratification by defendant of the acts of its officers in signing the contract. (*Ritch* v. *Smith*, 82 N. Y. 627; *Craighead* v. *Peterson*, 72 id. 279, 285; *Baldwin* v. *Burrows*, 47 id. 199, 213; *Seymour* v. *Wyckoff*, 10 id. 213; *Roach* v. *Coe*, 1 E. D. Smith, 175, 189; *Thompson* v. *Craig*, 16 Abb. [N. S.] 29; *Wager* v. *Reid*, 3 T. & C. 332, 337; *Nixon* v. *Palmer*, 8 N. Y. 398; *Harrington* v. *First Nat. Bk.*, 1 T. & C. 361, 369; *Suprs.* v. *B. R. R. Co.*, 19 Barb. 310; *De Peyster* v. *Pulver*, 3 id. 284; *Mallory* v. *Lord*, 29 id. 454; *Ballard* v. *Walker*, 3 Johns. Cas. 60; *Dearborn* v. *Cross*, 7 Cow. 49; *Griffin* v. *L. I. R. R. Co.*, 101 N Y. 354; *Wallis* v. *Randall*, 81 id. 164; *Keeney* v. *Mason*, 49 Barb. 254.)

*William C. De Witt* for respondent. The receiver being, at the time of making the contract, the president of the Long Island Railroad Company, and the company itself being a party to the contract through the signatures of its president and secretary, and, by its corporate seal, both the receiver and the company are estopped from questioning the validity of the contract on the question of authority. ( *Woodruff* v. *Erie R. Co.*, 93 N. Y. 609 ; Baker on Corp. 119, 118 n.; *Merchants' Bank* v. *State Bank*, 10 Wall. 644 ; *Olcott* v. *R. R. Co.*, 27 N. Y. 546 ; *Dabney* v. *Stevens,* 10 Abb. [N. S.] 39 ; *M. R. R. Co.* v. *D. V. R. R. Co.*, 28 Iowa, 437 ; *Erie R. Co.* v. *D. R. R. Co.*, 21 N. J Eq. 283 ; *Curtis* v. *Leavett*, 15 N. Y. 49 ; *Kincaid* v. *Dwinelle*, 50 id. 548 ; *Scott* v. *M. R. Co.*, 86 id. 200, 206, 207 ; *Hoyt* v. *Thompson*, 5 id. 320, 335.)

DANFORTH, J. This action was begun in November, 1884, to recover damages from the Long Island Railroad Company for breach of a written contract purporting to have been made on the 31st day of May, 1879, between the " Brooklyn, Flatbush and Coney Island Railway Company," of the first part, " Thomas R. Sharp, as receiver," of the property, etc., of the Long Island Railroad Company, of the second part, the " Long Island Railroad Company," of the third part, and the "Atlantic Avenue Railroad Company of Brooklyn," of the fourth part. It was, by its terms, to continue for a period of five years from its date. The Brooklyn, Flatbush and Coney Island Railroad Company and the Long Island Railroad Company were severally the owners and operators of railways, and, so far as is material to any question calling for our discussion, the terms of the contract were such that the first named company was required to extend and maintain its track at its own expense, but in a manner satisfactory to the other company, from its then terminus at Bedford station, so that it should connect with the tracks of the Long Island Railroad Company on Atlantic avenue, and thus form continuous lines of double track railroad between the depots of that company at Flatbush avenue and East New York, and the depot of the Brooklyn,

Flatbush and Coney Island Railway Company at Brighton Beach on Coney Island, and as it pleased, run trains over the line so made continuous between Flatbush avenue and Brighton Beach. The Long Island Railroad Company and Sharp, its receiver, agreed to furnish it .with "all necessary depot facilities for its trains and passengers" at Flatbush avenue, and through its agents sell the tickets at that place; and the party of the first part agreed to pay to the Long Island Railroad Company, in compensation "for the use of its tracks, the sale of its tickets and for depot facilities, twenty per cent of all moneys earned by it for the transportation of passengers between Flatbush avenue and any and all points on the line of the party of the first part, south of Bedford station." Similar rights were secured to the Long Island Railroad over the continuous line, and a described portion of the plaintiff's tracks and depot facilities secured to it at Brighton Beach, and for this use and these facilities the defendant agreed to pay thirty-three and one third per cent of all moneys earned by it for the transportation of passengers between Long Island City and Brighton Beach, and thirty-five per cent of all moneys earned by it for the transportation of passengers between Bushwick and Brighton Beach, and certain other proportion for passengers between other stations.

It was also provided that the party of the first part "(the B. F. & C. Co.)" shall begin to run trains from Flatbush avenue to Brighton Beach, and the party of the second part "(the L. I. R. R. Co.)" from Long Island City to Brighton Beach, on or before the fifteenth day of June in each year, and shall run every day thereafter, Sundays excepted, until the first day of October, at least twelve trains each way." Other payments were provided for, growing out of these arrangements for the use of each other's track, and it was agreed that full statements of the business done under the agreement should be given to each party by the other at stated intervals, and that the books of the several companies should be open to the other's inspection. The receivership of the Long Island Railroad terminated in October, 1881, and the road was restored

to the company. The questions at issue concern only the plaintiff, who represents the party of the first part in the agreement, and the defendant, the Long Island Railroad Company. The alleged breach consisted, in substance, of the failure of the defendant's receiver, and its own subsequent refusal to run the trains of the Long Island Railroad Company over a certain portion of the plaintiff's road, as provided by the contract, and their omission to furnish depot facilities as also therein provided. Issue was taken upon these allegations and a trial had. At the close of the evidence the defendant's counsel moved the trial judge to dismiss the complaint on the ground that the evidence was insufficient to show a contract between the plaintiff and defendant. The motion was denied and the case submitted to the jury upon both issues. Their verdict was for the plaintiff, and it has been approved both by the trial judge, in denying the defendant's motion for a new trial, and by the General Term in affirming the order and the judgment entered upon the verdict. The defendant's contention is that the contract was not binding upon it. It was, as is conceded, executed in the name of the corporation by its president and secretary. It was sealed with its corporate seal, affixed by its proper officers. It was, therefore, presumptively valid and was binding upon the corporation until evidence to the contrary should be produced. If the seal was obtained fraudulently or the officers acted without authority either in executing the contract in their official character, or in affixing the seal, it lay with the defendant to establish those facts. The evidence adduced for that purpose was from the secretary. He testified that the contract was drafted in pursuance of negotiations between the two companies, and the draft was in " his office." An emergency arose which called for its completion, and he, after consulting with Sharp, the president, with him, signed, sealed and delivered it. " I expected," he says, " to get a ratification." Both of these officers were also directors, and the witness says: " I intended to call the board's attention to it, but forgot it."

The court committed no error in refusing to dismiss the complaint or in refusing to charge the jury that the contract was not binding upon the company. Sharp, the president, was not examined upon that point, and whether the officers of the company did, in fact, exceed their authority, might have been, under the evidence, a question for the jury. No request was made to submit it. There was, however, abundant and conclusive evidence that the contract was adopted and ratified by the defendant in its corporate capacity. It was, as the secretary and counsel of the defendant testified, drafted in pursuance of negotiations had between the parties. It was acted upon by the defendant in the management of its business; for one year the defendant complied with its terms and received for the entire period the benefit of a faithful performance on the part of the other contracting party. It necessarily affected the running of plaintiff's trains and the management of the business for which it was incorporated. As summarized by the learned counsel for the appellant, " it gave rights to another corporation " (the plaintiff) " to use the tracks and depots of the Long Island Railroad Company, and provided for a division of earnings," and it is impossible to suppose that these things were suffered or enjoyed without full corporate knowledge of the contract obligations by which they were provided for. Moreover, the defendant received a pecuniary benefit under the contract, upon the assumption that the contract was valid. If they intended to disavow it, it was their duty to be active in so doing and not remain willfully passive, in order to profit by an omission or mistake on the part of their own officers, and which they might have prevented. The appellant argues that the objects of the parties might have been attained by two contracts as well as by one, and, therefore, that the defendant is at liberty to adopt so much as makes for its benefit and reject the rest. It may be that two separate contracts could have been framed in such manner as to meet the views of the parties, and in that case one have been rejected at the party's risk and the other per-

formed, but only one was prepared, and that recites that
" in consideration of the mutual covenants and agreements "
therein " contained," the parties have agreed and do agree as
therein expressed. The provisions are reciprocal. One party
cannot say " I have got all I bargained for," and without
liability repudiate the mutual obligation which enabled it to
do so, and formed the consideration of the bargain. One
promise was the consideration for the other, and together they
constituted a binding agreement. If, in fact, the formal exe-
cution of the contract was unauthorized, it is plain the agree-
ment was one the company had power to make, one which
they intended to make, supposed they had made, and which,
with knowledge, or full means of knowledge of its terms,
they acquiesced in and ratified by acting under it, so long as
it was profitable, and refusing to do so only when it seemed
otherwise, but receiving the benefit of it at all times. It is
now argued that the question of ratification should have been
passed upon by the jury. It is a sufficient answer that no
request was made to have it submitted to them, but it may be
further said that upon that point the evidence was all one way
and conclusive in the highest degree. We find no legal merit
in either of these points. The other questions raised by the
appellant have been examined, and so far as they require par-
ticular observation the remarks of the General Term are
sufficient. We find none which requires other discussion.
Upon the assumption that the contract bound the defendant,
the plaintiff's way was clear and his right to a recovery certain.
The reasonableness of the amount actually given to him is
not for us to determine.

The judgment appealed from should be affirmed.

All concur.

Judgment affirmed.